UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __4/8/2022__
```

JONATHAN POSTELL, SR.,

                              Plaintiff,

          -against-

FALLSBURG LIBRARY,

                              Defendant.

20-CV-03991 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiff Jonathan Postell, Sr. ("Plaintiff") brings this *pro se* action under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17; the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12112-12117; the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621-634; section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.* ("RA"); 42 U.S.C. § 1981; the New York State Equal Pay Act ("NYSEPA"); and the New York State and City Human Rights Laws ("NYSHRL" and "NYCHRL"), alleging that his employer, Fallsburg Library ("Defendant"), discriminated against him based on his race, sex, age, national origin, and disability. Before the Court is Defendant's motion to dismiss Plaintiff's Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 22.)

For the following reasons, Defendant's motion is GRANTED in part and DENIED in part.

## BACKGROUND

### A. Factual Background

For the purposes of considering a motion to dismiss pursuant to 12(b)(6), a court is generally confined to the facts alleged in the complaint. *Cortec Indus. v. Sum Holding L.P.*, 949

F.2d 42, 47 (2d Cir. 1991).  The court may, however, consider factual allegations made by a *pro se* party outside the complaint, such as in his papers opposing a motion to dismiss, to the extent that they are consistent with the allegations in the complaint. *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a pro se party in his papers opposing the motion."); *see also Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987).

The following facts are drawn from Plaintiff's operative complaints and filings,[1] including Plaintiff's opposition memorandum to the instant motion. These facts are accepted as true and construed in the light most favorable to Plaintiff for purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff is a 69-year-old, African American male. (Amended Complaint, ECF No. 6, (hereinafter "AC").) Plaintiff suffers from degenerative disc disease, or osteoarthritis, which prevents him from continuously sitting, walking, or standing for more than four hours at a time. (ECF No. 6).  In 2001, Plaintiff was diagnosed with leaky disc syndrome. (*Id*. at 16-19.)  In 2004, Plaintiff was granted disability benefits and received Medicare health insurance coverage. (Letter addressed to Judge Román, ECF No. 18 (hereinafter, "LJR").)

> a. *Plaintiff claims Defendant discriminated against him by hiring a less-qualified white female over him*

---

[1] Plaintiff filed his initial *pro se* form complaint for employment discrimination on May 21, 2020. (ECF No.2). Pursuant to Judge Stanton's order, Plaintiff filed an amended form complaint (ECF No. 4) and a letter to Judge Stanton further articulating his claims (ECF No. 5), both on August 27, 2020. The Court construed the letter as a supplement to the amended form complaint in Order of Service dated September 26, 2020. (ECF No. 8.) The two documents filed on August 27, 2020 operatively serve as the Amended Complaint ("AC"). On March 18, 2021, Plaintiff filed an additional letter addressed to the undersigned ("LJR," ECF No. 18), which the Court construes as a supplement to the AC. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

In 2005, Plaintiff took two civil service exams for clerk positions and received a score of 98 and 97, respectively. (*Id.* ¶ 3.)  Plaintiff used these scores to apply for clerical positions with Defendant. (*Id.* ¶ 3.)  After Plaintiff submitted his application, Defendant informed him that it was waiting for the responses of two women who both scored 100 on the exam and therefore had priority over Plaintiff for the position. (*Id.* ¶ 3.)  Defendant eventually hired Plaintiff as a part-time circulation desk clerk. (*Id.* ¶ 3.)  The part-time designation, Plaintiff claims, is "all [his] doctors would allow [him] to work at the time." (*Id.* ¶ 3.) At the time of Plaintiff's hiring, his position included thirteen days of paid holidays per year. (Complaint, ECF No. 2 (hereinafter, "Compl."); AC at 10.)  In 2008, Defendant changed this policy,[2] and to date, part-time employees of Defendant do not receive pay for holidays. (AC at 6.)

Shortly after starting to work for Defendant, Plaintiff discovered that one of his colleagues, Virginia Fostener, a white female who only scored 79 on the civil service exam, was hired a week before Plaintiff. (LJR ¶ 3.)  Defendant hired both Ms. Fostener and Plaintiff in 2005 as part-time clerks. (Pl. Opp. at 3, ECF No. 23.)  Defendant currently employs Ms. Fostener as a full-time employee, (LJR ¶ 3.), and as supervisor to Plaintiff (Pl. Letter to Judge Stanton ¶ 2, ECF No. 5 (hereinafter, "LJS").)

> b.   *Plaintiff claims Defendant discriminated against him based on his disability*

Sometime during his employment with Defendant, Plaintiff requested an ergonomic chair from Defendant due to his spinal ailment. (LJR ¶ 6.)  Defendant denied Plaintiff's request for lack of sufficient funds. (*Id.* ¶ 6.)  Plaintiff then contacted a state assistance program, Vocational and Educational Services for Individuals with Disabilities (VESID), which supplied him with a proper chair and an electric VersaDesk. (*Id.* ¶ 6.)  Plaintiff left this ergonomic chair in his office at

---

[2] Plaintiff is currently on a "40hrs per year sick day plan." (Compl. ¶ 6.)

Defendant's library. When he returned to work one day, Plaintiff discovered that one of the chair's features was broken while he was away. (Pl. Opp. at 15.)  Shortly after Plaintiff received his ergonomic chair and electric VersaDesk from VESID, Defendant purchased new office chairs for its other employees, as well as new chairs for library patrons. (*Id.* ¶ 6.)

    *c.   Plaintiff claims Defendant discriminated against him by depriving him of equal pay*

Plaintiff receives compensation as a "Clerk – Circulation," one of the job positions described in the "ALA-APA Salary Survey Position Descriptions, Librarian and Non-M[aster] [of] L[ibrarian] S[cience]."[3] (AC at 11-13.)  Throughout his employment with Defendant, Plaintiff has received no personal raise in his compensation. (AC at 6; LJR ¶ 5.)  Sometime around 2009 or 2010, Liam Rogers, then Defendant's director, assured Plaintiff that he would receive a personal raise. (LJR ¶ 5.)  However, upon receiving his next paycheck, Plaintiff learned that he would receive no raise because "the board . . . denied [it.]" (*Id.*)

In 2011, Plaintiff accepted the position of "Copy Cataloguer," which a woman named Nicole Morris held for approximately five to six years. (LJS ¶ 2; LJR ¶ 5.)  Plaintiff avers that Ms. Morris had been a full-time employee in her capacity as cataloguer and had received multiple personal raises throughout her employment. (LJR ¶ 5.)  Plaintiff expected to receive the same full-time capacity and individual raises as his predecessor did, but he received none. (*Id.*)  Instead, he has remained in a part-time capacity. (*Id.* ¶ 5.)  Beginning in 2012, Plaintiff made repeated requests to Defendant for a raise commensurate with his experience in August 2020, October 2020, and most recently, on March 21, 2021. (Compl. at 5; Pl Opp. at 12.)  In 2019, Plaintiff learned that Defendant paid him at least fifteen cents less than a white colleague, Amanda Lethoic, who was

---

[3] Plaintiff submitted the "ALA-APA Salary Survey Position Descriptions" as part of his amended complaint and indicated in handwritten notes that while he is paid as a "Clerk – Circulation," he holds the position of "Copy Cataloguer." (AC at 11-13.)

hired at an unspecified time after Plaintiff assumed the position of cataloguer. (Pl Opp. at 12.) To date, Plaintiff never received an individual raise. (Pl Opp. at 12 - 13.)

> ### d. Plaintiff claims Defendant discriminated against him based on his race

On October 31, 2013, Plaintiff's supervisor, then-Director of Defendant David J. Phillips arrived at work wearing blackface, or dark makeup, mimicking the appearance of a black person. (Pl Opp. at 12-13.)  Plaintiff avers in his opposition memorandum that, because Defendant was neither having a Halloween party on that day, nor had any employees of Defendant ever dressed in any costumes on Halloween since Plaintiff started working in 2005 (*Id*. at 13.), Plaintiff found Mr. Phillips' behavior "especially egregious." (*Id*. at 13.)  Mr. Phillips is no longer an employee of Defendant. (*Id*. at 13.)

> ### e. Plaintiff files a complaint with the EEOC and claims Defendant retaliated

Plaintiff states he filed an internal complaint with Defendant's Board regarding his wage, part-time status, and other issues on February 6, 2019. (Pl. Opp. at 4.)  The Board denied Plaintiff's requests. (*Id.*)  Plaintiff then filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on April 9, 2019. (*Id.*)

Plaintiff alleges in his EEOC complaint that Defendant retaliated against him after it became aware of his EEOC complaint. (Pl. Opp. at 16.)  Within two to three weeks after he filed his EEOC complaint, Plaintiff claims that Defendant's director Kathy Wells confronted him with accusations that Defendant had "received around 20 complaints about Plaintiff" from its patrons. (*Id.*)  Plaintiff states that he "had never previously been informed about complaints against him" until after his EEOC filing. (*Id.* at 16.)    In addition to the patron complaints, Defendant redistributed Plaintiff's duties as cataloguer to other employees around April 19, 2019 and started giving Plaintiff tasks "outside of what [he has] done for fourteen years that no one else has been

asked to perform." (LJR ¶ 2.)  Plaintiff received his Notice of Dismissal and Right to Sue from EEOC on March 9, 2020. (AC at 7, ECF No. 6.)

> *f.   Plaintiff files the instant action and claims Defendant continues to retaliate*

On May 21, 2020, Plaintiff commenced the instant action. (Compl., ECF No.2.)  Currently, Defendant divides the responsibility of the cataloguer position between Plaintiff and another part-time employee whom Defendant hired in 2020. (LJR ¶ 5.)  Plaintiff claims that after commencing the instant action, he was "cataloging two days a week and working circulation desk one day a week [,]" while a new employee who "works in [Plaintiff's] position [does so] two days a week." (LJR ¶ 5.)  Plaintiff was also "assigned to [his] fellow worker Virginia [Fostener]." (LJS ¶ 2.) Defendant also changed Plaintiff's job position from "cataloguer" back to "clerk," the same title held by Plaintiff when he first began working for Defendant in 2005. (Pl. Opp. at 16.)

**B.  Plaintiff's claims**

As noted above, Plaintiff commenced the instant action on May 21, 2020. (Compl., ECF No. 2.)  In this initial *pro se* form complaint, Plaintiff checked off the boxes for the following causes of action:

(1) Title VII, under which Plaintiff checked off employment discrimination based on "race," "color," "sex," and "national origin";

(2) 42 U.S.C. § 1981, for intentional employment discrimination on the basis of race;

(3) the ADEA, for employment discrimination on the basis of age (40 years or older);

(4) the RA, for employment discrimination based on a disability by an employer that constitutes a program or activity receiving federal financial assistance, under which Plaintiff listed his disability as "leaking disk [sic]";

(5) the ADA, for employment discrimination on the basis of a disability, under which Plaintiff listed his disability as "leaking disk [sic]";

(6) the NYSHRL, for employment discrimination on the basis of age, race, color, national origin, sex, disability; and

(7) the NYCHRL, for employment discrimination on the basis of age, race, color, national origin, sex, disability

(*Id.* at 5.) Following the list of causes of action, Plaintiff checked the following adverse employment actions in his initial form complaint: (1) failure to promote; (2) failure to accommodate disability; (3) unequal terms and conditions of employment; (4) retaliation; (5) harassment or hostile work environment; and (6) other, which Plaintiff specified as "denied my seniority, demoted me, ignored my grandfather claus [sic] rights." (*Id.*)

Pursuant to Judge Stanton's Order to Amend, dated June 25, 2020 (*see* ECF No. 4), Plaintiff submitted an amended complaint, which Judge Stanton ordered to "completely replace, not supplement, the original complaint." (*Id.* at 9.)  Judge Stanton also directed that "any facts or claims that Plaintiff wishes to maintain must be included in the amended complaint." (*Id.*)

In his amended *pro se* form complaint, Plaintiff checked the following causes of action: (1) Title VII; (2) the ADEA; (3) the ADA; (4) the NYSHRL; and (5) the NYCHRL. (*See* ECF No. 6.)  Following his amended list of causes of actions, Plaintiff checked off the boxes for the following adverse employment actions: (1) failure to promote; (2) failure to accommodate disability; (3) unequal terms and conditions of employment; (4) retaliation; and (5) other acts, which Plaintiff specified as "demoting me to clerk, giving out my job to all employees so I can no longer say I am only one who does cataloging." (*Id.* at 2-3.) The Court liberally construes these "other acts" as part of Plaintiff's retaliation claims.

Plaintiff further stated in the amended complaint that Defendant discriminated against him based on "race," "color," "gender," "age,"[4] and "disability or perceived disability."[5]   In comparison to his initial complaint, Plaintiff omitted claims under 42 U.S.C. § 1981 and the RA[6] in his AC. Plaintiff also omitted the category of "national origin" in his AC.

On April 26, 2021, Defendant filed the instant motion to dismiss Plaintiff's AC. (ECF No. 20-22.)  On May 27, 2021, Plaintiff filed his opposition[7] (ECF No. 23), in which he re-raised those two claims he had raised in his original complaint but omitted in his AC—namely, 42 U.S.C. § 1981 and RA § 504.  In his opposition, Plaintiff also raised two additional statutory causes of action for unequal pay under Title VII and the NYSEPA. (*Id*. at 16-17.)

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The complaint must supply "factual allegations sufficient to raise a right to relief above the speculative level." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).  A court must take all material factual allegations as true and draw

---

[4] Plaintiff noted next to the "age" category that his birth date is April 17, 1951. (AC at 3.) Plaintiff supplied no other factual allegations regarding discrimination on the basis of age in his pleadings.

[5] Plaintiff did not specify which disability he intended to allege on the amended form complaint.

[6] This cause of action is only enforceable against an employer that constitutes a program or activity receiving federal financial assistance.

[7] Plaintiff prepared his opposition memorandum with the assistance of New York Legal Assistance Group's Legal Clinic for *Pro Se* Litigants in the Southern District of New York.

reasonable inferences in the non-moving party's favor, but the court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (citation omitted).

For the purposes of considering a motion to dismiss pursuant to 12(b)(6), a court is generally confined to the facts alleged in the complaint. *Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). The court may, however, consider factual allegations made by a *pro se* party outside the complaint, such as in his papers opposing a motion to dismiss, to the extent that they are consistent with the allegations in the complaint. *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013); *Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987). The court may also consider documents attached to the complaint and statements or documents incorporated into the complaint by reference. *See Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013).

Where a plaintiff proceeds *pro se*, the court must "construe [the] complaint liberally and interpret it to raise the strongest arguments that it suggests." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013). Nevertheless, "the liberal treatment afforded to *pro se* litigants does not exempt a *pro se* party from compliance with relevant rules of procedural and substantive law," *id.* at 403, and the Court's "duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it." *Davila v. Lang*, 343 F. Supp. 3d 254, 266 (S.D.N.Y. 2018) (internal citations omitted).

## DISCUSSION

In total, Plaintiff asserts nineteen causes of actions against Defendant. Defendant seeks to dismiss all claims brought by Plaintiff for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6). ("Def. Mot.", ECF No. 22.) Specifically, Defendant argues that (1)

Plaintiff cannot raise new claims in his opposition brief; (2) NYCHRL does not apply to Defendant because Plaintiff does not work in New York City; (3) Defendant is not an employer within the meaning of Title VII and ADA; (4) Plaintiff abandons multiple claims for failure to oppose; and (5) Plaintiff fails to properly plead all his remaining claims. The Court addresses each of Defendant's claim below.

## I.   New Claims and Factual Allegations in Plaintiff's Opposition

Defendant first contends that Plaintiff should be barred from raising additional claims in his opposition brief that were not included in the Amended Complaint. But the Court disagrees. Courts consistently permit *pro se* litigants to raise a claim for the first time in their opposition papers to the motion to dismiss. *See Davila v. Lang*, 343 F. Supp. 3d 254, 266 (S.D.N.Y. 2018) ("The Court may consider new claims appearing for the first time in briefing if the claims could have been asserted based on the facts alleged in the complaint.") (Internal citations omitted); *see also Pullman v. Alpha Media Publ., Inc.*, 2013 U.S. Dist. LEXIS 50697, *16 (S.D.N.Y. Jan 11, 2013). Courts also consider new facts pled by *pro se* plaintiffs in their opposition briefing to motions to dismiss. *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a pro se party in his papers opposing the motion."); *Loccenitt v. City of New York*, 2012 WL 3822213, at *2 (S.D.N.Y. Sept. 4, 2012) (adopting magistrate judge's recommendation to construe plaintiff's new factual allegations in opposition brief as amending complaint); *Philippeaux v. United States*, 2011 WL 4472064, at *4 (S.D.N.Y. Sept. 27, 2011) (considering new claims and facts pled by *pro se* plaintiff in opposition to motion to dismiss).

Here, the Court first notes that Plaintiff used an outdated version of the "Amended Complaint for Employment Discrimination" form—a standard form available to *pro se* plaintiffs

in this District.  This older version that Plaintiff used does not contain a complete list of statutory claims that the form that Plaintiff initially filed contained.  As a result, Plaintiff was unable to raise claims under § 1981 and the RA in this outdated form. Hence, the Court does not attribute this deficiency caused by the forms to Plaintiff.  Further, given that Plaintiff re-raised these two omitted claims in his opposition, the Court must then consider such claims.

As for Plaintiff's claim for unequal pay under Title VII and NYSEPA, Plaintiff's initial Complaint and AC can both be construed to allege unequal compensation and treatment. *See Lang v. New York City Health & Hosps. Corp.*, No. 12 CIV. 5523 (WHP), 2013 U.S. Dist. LEXIS 126876 (S.D.N.Y. Sept. 5, 2013) (considering 42 U.S.C. §1981 and NYSHRL claims raised in an opposition brief because the brief "simply articulates additional claims that the original complaint could have been construed to allege").  Accordingly, the Court denies Defendant's motion to dismiss Plaintiff's claims under § 1981 and the RA, as well as his claims for equal pay under Title VII, and NYSEPA, on the ground that they were first asserted in the opposition memorandum.

## II.    NYCHRL Claims

Defendant next contends that the Court must dismiss Plaintiff's claims under the NYCHRL because he does not work in New York City. (Def. Mot. at 9, ECF. No. 22.)  The Court agrees.

New York State law and the New York City Administrative Code limit the applicability of the NYCHRL to acts occurring within the boundaries of New York City. *See* N.Y. Gen. Mun. Law § 239-s (1999); N.Y.C. Admin. Code § 2-201 (2003); *see also Germano v. Cornell Univ.*, 2005 WL 2030355 (S.D.N.Y. Aug. 17, 2005) ("To state a claim under the NYCHRL, plaintiff must allege that the defendants intentionally discriminated against them within New York City." (citations omitted)).

Here, in his opposition, Plaintiff himself admits that he does not work in New York City by conceding that he erroneously "checked the NYC on the [amended *pro se* form complaint]." (ECF No. 18.)  Accordingly, the Court dismisses all of Plaintiff's NYCHRL claims with prejudice.

### III.    Title VII and ADA Claims

Defendant next argues that the Court must dismiss Plaintiff's claims under Title VII and the ADA because it is not an "employer" covered by these statutes. After due consideration, the Court agrees.

Title VII and ADA applies to employers with at least fifteen employees "for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b); *see Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006); *Pavel v. Plymouth Mgmt. Group, Inc.*, 198 F. App'x 38, 40-41 (2d Cir. 2006) (quoting 42 U.S.C. § 12111(5)).  Here, Plaintiff concedes that the total number of employees of Defendant is fewer than fifteen.  (Pl. Opp. at 5.) Nevertheless, Plaintiff argues that Defendant is a member of the Ramapo Catskill Library System ("RCLS"), and that Defendant's relationship with and dependence on RCLS satisfy either the integrated enterprise doctrine or the single employer test.

In the Second Circuit, the integrated enterprise doctrine or the single employer test applies when a party brings an employment action against a defendant who is not plaintiff's direct employer. *See Parker v. Columbia Pictures Inds.,* 204 F.3d 326, 341 (2d Cir. 2000) ("To prevail in an employment action against a *defendant* who is not the plaintiff's direct employer, the plaintiff must establish that the *defendant* is part of an 'integrated enterprise' with the employer, thus making one liable for the illegal acts of the other." (emphasis added)).

Here, Plaintiff did not name RCLS as a defendant in either his original complaint or his AC.  Instead, he referenced RCLS for the first time in his opposition, but without clear language

indicating whether his intention was to add RCLS as an additional defendant. (Pl. Opp. at 5, ECF No. 23.)  Plaintiff relies on *Brown v. Daikin Am. Inc.* to support applicability of the integrated enterprise doctrine or the single employer test. 756 F.3d 219 (2d Cir 2014). Yet *Brown* is distinguishable, since the plaintiff in that case did initially bring the action against both the subsidiary and its parent company; however, at the time of appeal, only the subsidiary remained as a defendant. *Brown*, 756 F.3d at 219.  Thus, the Second Circuit considered the parent company's size in *Brown* for the precise reason that the dismissal of the parent company as a co-defendant was one of the issues on appeal. 756 F.3d at 224; *Brown v. Daikin Am., Inc.*, No. 10 Civ. 4688(CS), 2011 WL 10842873, at *5–8 (S.D.N.Y. Aug. 19, 2011).  In contrast, while Defendant may be a member of RCLS, this relationship or membership without more does not automatically join RCLS as a party in this case.  Plaintiff merely provides ambiguous and conclusory language in his opposition that provides neither sufficient factual nor legal basis on which to justify joining RCLS as a party in this case.

Furthermore, even assuming Plaintiff's intention was indeed to add RCLS as a co-defendant, neither does Plaintiff's AC nor his opposition briefing indicate whether Plaintiff exhausted his administrative remedies with respect to RCLS.  Under Title VII and ADA, before bringing claims against a party in federal court, a plaintiff must first name that party as defendant in a complaint filed with the EEOC. *Johnson v. Palma*, 931 F.2d 203, 209 (2d Cir. 1991). Failure to do so may result in dismissal for lack of subject matter jurisdiction. *Id.* at 209.  In a single footnote in his opposition memorandum, Plaintiff concedes that he never named RCLS in his charges with EEOC, but he contends that the Second Circuit has permitted plaintiffs to proceed against an unnamed party if "there is a clear identity of interest between [the named party and the unnamed party in the EEOC filings]." (Pl. Opp. at 7, n.3).  The Second Circuit uses a four factor

test to determine whether a clear identity of interest exists: "(1) whether the role of the unnamed party could, through reasonable effort by the complainant, be ascertained at the time of the filing of the EEOC complaint; (2) whether, under the circumstances, the interests of a named party are so similar to the interests of the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be necessary to include the unnamed party in the EEOC proceedings; (3) whether the absence of the unnamed party from the EEOC proceedings resulted in actual prejudice to that party's interests; and (4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party." *Taylor v. MCI*, Int'l, 215 F. Supp. 2d 347, 351 (S.D.N.Y. 2002) (citing *Johnson v. Palma*, 931 F.2d 203, 209 (2d Cir.1991)).  In his opposition memorandum, Plaintiff provides no argument or sufficient factual allegations on which the Court could draw inferences in his favor to support a finding that there is "a clear identity of interest" between Defendant and RCLS.

In sum, the Court concludes that neither the integrated enterprise doctrine nor the single employer test applies here because RCLS is a nonparty and Plaintiff never moved to join it as a defendant in this case.  Therefore, on the facts alleged, Defendant is not an "employer" under Title VII and ADA.  Accordingly, the Court dismisses all of Plaintiff's claims under Title VII and ADA without prejudice.

### IV.    **Unopposed Claims**

It is well-settled that the failure to oppose an argument raised in a motion to dismiss is deemed a concession of the argument and abandonment of the claim. *See Wilkov v. Ameriprise Fin. Servs., Inc.*, 753 F. App'x 44 (2d Cir. 2018) ("We affirm the District Court's dismissal of those claims on the ground that they were 'abandoned' by Wilkov when she failed to oppose them

in her opposition to Ameriprise's motion to dismiss."); *McGee v. McGready*, No. 16-cv-4187 (NSR), 2019 WL 6341290, at *3 n. 4 (S.D.N.Y. Nov. 26, 2019).

Here, the Court notes that Plaintiff did not oppose Defendant's arguments to dismiss his age discrimination claims under the ADEA and NYSHRL, his discrimination claims based on national origin under Title VII and NYSHRL, and his discrimination claims based on perceived disability under the ADA and NYSHRL.  In consideration of Plaintiff's *pro se* status, this Court has liberally construed his pleadings and considered the new facts and claims set forth in his opposition briefing to raise the strongest arguments they suggest. *See Harris v. City of N.Y.*, 607 F.3d 18, 24 (2d Cir. 2010); *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). Yet "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *See Sykes v. Bank of Am.,* 723 F.3d 399, 403 (2d Cir. 2013); *Cosby v. City of White Plains*, 04-CV-5829, 2007 U.S. Dist. LEXIS 23770, 2007 WL 853203, at *3 (S.D.N.Y. Feb. 9, 2007).  Therefore, the Court concludes that Plaintiff has abandoned his claims age discrimination claims under the ADEA and NYSHRL, his discrimination claims based on national origin under Title VII and NYSHRL, and his discrimination claims based on perceived disability under the ADA and NYSHRL. Among these claims, all Title VII and ADA claims are already dismissed without prejudice in *supra* section IV for reasons stated above.  All remaining unopposed claims are hereby dismissed without prejudice.

### V.    NYSEPA Claim

Claims for violations of the NYSEPA are evaluated under the same standard as the Federal Equal Pay Act. *See Rose v. Goldman, Sachs & Co., Inc.*, 163 F. Supp. 2d 238, 242-43 (S.D.N.Y. 2001); *Gibson v. Jacob K. Javits Convention Center of New York,* No. 95 Civ. 9728, 1998 WL 132796, at *2 (S.D.N.Y. Mar. 23, 1998).  To establish a violation under the NYSEPA, a plaintiff

must show that: (1) the employer pays different wages to employees of different genders and/or races; (2) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (3) the jobs are performed under similar working conditions. *Lavin–McEleney v. Marist Coll.*, 239 F.3d 476, 480 (2d Cir. 2001) (citations omitted); *Moazzaz v. MetLife, Inc*, No. 19-CV-10531 (JPO), 2021 WL 827648, at *4–5 (S.D.N.Y. Mar. 4, 2021).   A plaintiff is not required to demonstrate that his job is identical to a higher paid position, but rather must show that the two positions are "substantially equal" in skill, effort, and responsibility. *Lavin–McEleney,* 239 F.3d at 480 (citations omitted).

Plaintiff identifies in his opposition brief only one individual, Amanda Lethoic, a white female who is paid at least 15 cents more per hour than Plaintiff. (Pl. Opp. at 12.)  Plaintiff also submitted the "ALA-APA Salary Survey Position Descriptions" as part of his amended complaint, where he included handwritten notes indicating that, while he is paid as a "Clerk – Circulation," he holds the position of "Copy Cataloguer." (AC at 11-13.)  However, Plaintiff fails to specify Ms. Lethoic's job responsibilities anywhere in his operative pleading and filings.  Indeed, Plaintiff supplies no information whatsoever regarding Ms. Lethoic's skills, qualifications, or job title.  The Court thus has no factual basis upon which to determine whether Ms. Lethoic and Plaintiff perform substantially equal work that requires equal skill, effort, and responsibility. Accordingly, the Court must dismiss Plaintiff's NYSEPA claim without prejudice.

### VI.    42 U.S.C. § 1981 Claim

To establish a claim under 42 U.S.C. § 1981, a plaintiff must allege facts supporting that "(1) the plaintiff is a member of a racial minority; (2) defendant['s] intent to discriminate on the basis of race; and (3) discrimination concerning one of the statute's enumerated activities." Those enumerated activities include the rights "to make and enforce contracts, to sue, be parties, give

evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property." 42 U.S.C. § 1981(a). *See Felder v. United States Tennis Ass'n*, 2022 U.S. App. LEXIS 5848, *26 (2d Cir. 2022) (internal quotations and citations omitted); *Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 1999). In addition, the plaintiff "bears the burden of showing that race was a but-for cause of its injury." *Felder*, 2022 U.S. App. LEXIS 5848, *26. In other words, the plaintiff "must *initially plead* and ultimately prove that, but for race, [he] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 140 S.Ct. 1009, 1019, (2020) (emphasis added).

On the facts alleged, the Court is unable to conclude Plaintiff has met his burden to plead that, but for his race, he would not have suffered the loss of a legally protected right. Plaintiff's opposition brief bundles his § 1981 claim together with his Title VII and NYSHRL claims and alleges that Defendant intentionally discriminated against him "because of his race, gender, or age." (Pl. Opp. at 8.) This allegation precludes this Court from a determination of race as the but-for cause for Defendant's alleged misconducts. On the contrary, Plaintiff's allegation on the basis of "race, gender, or age" casts doubt on Section 1981's applicability to his claims, as it is well settled that 42 U.S.C. § 1981 provides no claim for gender or age. *See Runyon v. McCrary*, 427 U.S. 160, 167 (1976) ("42 U.S.C. § 1981 is in no way addressed to [gender or religion]"); *Alexander v. City of New York*, 957 F. Supp. 2d 239, 247 (E.D.N.Y. 2013) ("[Section] 1981 does not provide a claim for gender-based employment discrimination.") (internal citations omitted). Accordingly, the Court dismisses Plaintiff's 42 U.S.C. § 1981 claim without prejudice.

## VII.    Failure to Accommodate Claim Under Rehabilitation Act of 1973 § 504

An employer violates the Rehabilitation Act when it fails to "make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual

with a disability who is an applicant or employee," unless the employer can establish that the accommodations would "impose an undue hardship." *Jackan v. New York State Dept. of Lab.*, 205 F.3d 562, 566 (2d Cir. 2000); *see also* 29 U.S.C. § 794(a).  For a discrimination claim under § 504 of Rehabilitation Act of 1973, Plaintiff is required to establish four elements: "(1) plaintiff's employer is subject to the [Rehabilitation Act]; (2) plaintiff was disabled within the meaning of the [Rehabilitation Act]; (3) with reasonable accommodation, Plaintiff could perform the essential functions of the position sought, and (4) that the employer has refused to make such accommodations." *Stone v. City of Mount Vernon*, 118 F.3d 92, 96–97 (2d Cir. 1997).

Defendant does not contest that it is subject to the RA, or that it is aware of Plaintiff's disability. [8] (Def. Reply at 5, ECF No. 24.)  Nonetheless, Defendant argues that Plaintiff failed to show that his alleged disability prevented him from performing the essential functions of his job, and "how having an ergonomic chair would allow him to perform those functions." (*Id*. at 5-6.) After thoroughly reviewing the pleadings, the Court agrees.

First, the Court notes that Plaintiff has not supplied the date on which he requested an ergonomic chair from Defendant. The statute of limitations on Rehabilitation Act claims is three years. *See Harris v. City of New York*, 186 F.3d 243, 248 (2d Cir. 1999).  Without specific dates of Plaintiff's request and Defendant's refusal, the Court is unable to determine whether Plaintiff's claim is time-barred. *Id.* at 248.

Second, even assuming that Plaintiff's RA claim is not time-barred, Plaintiff fails to show how an ergonomic chair, or any other kind of accommodation, would allow him to perform the essential functions of his current position or the full-time position he seeks. *See Stone v. City of*

---

[8] The Court recognizes that the Rehabilitation Act claim was one of the two statutory causes of action that were omitted from Plaintiff's Amended Complaint due to Plaintiff's use of an outdated form. As a result, Defendant's only opportunity to respond to this claim was in its Reply brief.

*Mount Vernon*, 118 F.3d at 97.  Plaintiff states in his letter to the Court that he initially started as a part-time clerk with Defendant because it was "all [his] doctors would allow [him] to work at the time." (LJR ¶ 3, ECF No. 18).  This statement seems to suggest that, at least in 2005, Plaintiff's initial status as a part-time employee was not attributable to Defendant.  Plaintiff's medical record indicates that Plaintiff suffers from degenerative disc disease and leaky disc syndrome, which prevents him from continuously sitting, walking, or standing for more than four hours at a time. (AC at 16-19, ECF No. 6).  In the same letter, Plaintiff states that as of March 2021, "[his] pain level has increased, [his] comfort level has decreased, and those felling's [sic] exist more than ever now." (LJR ¶ 7.)  Based on this statement, it appears that Plaintiff's physical condition has deteriorated since 2005.  If that is the case, the natural inference would be that Plaintiff is no more able to work in a full-time capacity now than when he first started as a part-time clerk in 2005. Thus, for Plaintiff to sufficiently plead his RA claim, he must show that an ergonomic chair, or any other accommodation he requested from and denied by Defendant, would allow him to perform the essential functions of either his current part-time position, or the full-time position he seeks.  However, despite a close examination of the pleadings, the Court is unable to find any supporting allegations to this effect.  Accordingly, the Court must dismiss Plaintiff's RA claim without prejudice.

## VIII.    NYSHRL Claims

Plaintiff alleges discrimination on the basis of race, gender, hostile work environment, and retaliation against Defendant under NYSHRL.  Defendant seeks dismissal of these claims on untimeliness and insufficient pleadings.  Claims under the NYSHRL are subject to a three-year statute of limitations. *See Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir.2007) (applying three-year statute of limitations to claims under the NYSHRL and the

NYCHRL); *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir.1997) (three-year statute of limitations for NYSHRL claims); N.Y. C.P.L.R. § 214(2).  Among these claims, Plaintiff specifies the date of occurrence only as to the retaliation claim, which took place in 2019 at the time of Plaintiff's EEOC filing.  Because the Court has no information to determine whether the remaining claims are time-barred, these claims are dismissed without prejudice. Plaintiff may amend his complaint to include those remaining claims that are not time-barred. The Court considers the retaliation claim below.

The NYSHRL states that it is "an unlawful discriminatory practice" for an employer, to "retaliate . . . because [an employee] . . . has filed a complaint, testified or assisted in any proceeding." N.Y. Exec. Law § 296 (McKinney).  To establish a *prima facie* case of retaliation under the NYSHRL, the plaintiff must show that "(1) he engaged in a protected activity, (2) his employer was aware of this activity, (3) the employer took an action disadvantaging the plaintiff, and (4) a causal connection exists between the alleged adverse action and the protected activity." *McGuire-Welch v. House of the Good Shepherd*, 720 F. App'x 58, 62 (2d Cir. 2018).

Here, Plaintiff engaged in a protected activity by complaining to EEOC, and thus satisfies the first element. The Court also concludes that Plaintiff has sufficiently pled adverse actions were taken against him, and that these adverse actions were caused by his EEOC filing.  Plaintiff states that he "had never previously been informed about complaints against him" until two or three weeks after his EEOC filing, at which time Defendant's director Kathy Wells confronted Plaintiff with accusations that Defendant had "received around 20 complaints about [Plaintiff]" from the library's patrons. (Pl. Opp. at 16.)  In addition to the deluge of patron complaints, Defendant redistributed Plaintiff's duties as cataloguer to other employees around April 19, 2019 and started giving Plaintiff tasks "outside of what [he has] done for fourteen years that no one else has been

asked to perform." Plaintiff's allegations suggest that he was in essence demoted from cataloguer to his prior position of clerk.  The notice of the alleged patron complaints, the redistribution of Plaintiff's responsibilities, along with the demotion, constitute adverse employment action. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (holding that a material adverse action is an action "a reasonable employee would have found" to be "materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge").

Plaintiff has also sufficiently pled causation. Causation may be shown "directly, through evidence of retaliatory animus by the person who initiated the adverse action against the plaintiff," or "indirectly, by showing that the retaliatory or discriminatory action was taken shortly after the protected activity." *Smith v. City of New York*, No. 16 cv 9244, 2018 WL 3392872, at *7 (S.D.N.Y. July 12, 2018). "A time lapse of less than one month between the date the supervisor learns of the protected activity and the date the supervisor disciplines the employee is sufficiently short to justify an inference of causation." *Id.* (citing *Kwan v. AndalexGrp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013) ("The three-week period from [the plaintiff's] complaint to her termination is sufficiently short to make a *prima facie* showing of causation through temporal proximity.")  Here, Plaintiff plausibly alleged that the complaints and the redistribution of his responsibilities took place within a month of his EEOC filing. This temporal proximity is sufficient to demonstrate a causal connection.

On the second element, Plaintiff alleges that Defendant "must have learned of the EEOC filing." (Pl. Opp. 16, ECF No. 23.) At this early stage of litigation, Plaintiff benefits from the temporary presumption that all facts alleged are true and are viewed in light of his minimal burden. *See Littlejohn v. City of New York*, 795 F.3d 297, 311 (holding that facts alleged only need to be

sufficient to give plausible support to the reduced requirements that arise under *McDonnell Douglas* in the initial phase of a NYSHRL litigation).  Because Plaintiff has adequately pled the other three elements, the Court will let discovery unveil more facts on the remaining element with regards to Defendant's knowledge of Plaintiff's EEOC filing.

The Court concludes that Plaintiff's NYSHRL claim for retaliation has been sufficiently pled. Accordingly, Defendant's motion to dismiss is denied only as to Plaintiff's NYSHRL retaliation claim.  All other NYSHRL claims are dismissed without prejudice for the reason stated above.

## LEAVE TO AMEND

Under Federal Rule of Civil Procedure 15, a court "should freely give leave" to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). The Rule encourages courts to determine claims "on the merits" rather than disposing of claims or defenses based on "mere technicalities." *Monahan v. NYC Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000) (internal citations omitted).

Plaintiff is granted leave to amend his complaint on the claims that are dismissed without prejudice. To submit such a Second Amended Complaint, Plaintiff must compile all his allegations, including the undismissed claims and the claims that are dismissed without prejudice, into one single document.  Plaintiff must include all factual allegations in the Second Amended Complaint.  Plaintiff is directed to refrain from supplying additional facts through letters addressed to the Court outside the Second Amended Complaint.

The Court strongly encourages Plaintiff to contact New York Legal Assistance Group's Legal Clinic for *Pro Se* Litigants in the Southern District of New York, as he has done for his opposition memorandum to the instant motion, to seek assistance.

## CONCLUSION

For the forgoing reasons, Defendant's motion is GRANTED in part and DENIED in part.

Plaintiff is granted leave to file a Second Amended Complaint as to any claims that have not been dismissed with prejudice. The Second Amended complaint must comply with the standards set forth above. If Plaintiff chooses to do so, Plaintiff will have until May 31, 2022, to file a Second Amended Complaint. A Second Amended Complaint for Employment Discrimination form is attached to this order. Defendants are then directed to answer or otherwise respond by June 21, 2022. If Plaintiff fails to file a Second Amended Complaint within the time allowed, and he cannot show good cause to excuse such failure, any claims dismissed without prejudice by this order will be deemed dismissed with prejudice. If no Second Amended Complaint is timely filed, the parties are directed to complete and file a Case Management Plan and Scheduling order by June 21, 2022. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 24.

Dated:    April 8, 2022                           SO ORDERED:
          White Plains, New York

                                      _____
                                            NELSON S. ROMÁN
                                          United States District Judge